IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION


| | | |
|---|---|---|
| LES HARGIS AND DEANNA HARGIS, | § | |
| AS REPRESENTATIVES OF THE | § | |
| ESTATE OF JACK HARGIS, | § | |
| DECEASED | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. H – 04 – 1692 |
| | § | |
| IDACORP ENERGY L.P. AND | § | |
| STANDARD INSURANCE COMPANY, | § | |
| | § | |
| Defendants. | § | |
| | § | |


**MEMORANDUM AND ORDER**

Pending before the Court are Defendants Idacorp Energy L.P. and Standard Insurance
Company's Motion for Summary Judgment (Docket # 27) and Plaintiffs Les and Deanna
Hargis's Motion for Summary Judgment (Docket # 28).  For the reasons set forth below,
Defendants' Motion for Summary Judgment is **GRANTED**, and Plaintiffs' Motion for Summary
Judgment is **DENIED**.

**I.  BACKGROUND**

Decedent Jack Gregory Hargis began employment with Idacorp, Inc. in March 1998,
when he was hired as the Director of Risk Trading in the Marketing Department at Idaho Power
Company, a subsidiary of Idacorp, Inc.  As part of his benefit package, Mr. Hargis was eligible
for company-provided life insurance in an amount equal to his annual salary, and supplemental
life insurance in an amount equal to two times his annual salary, for a total life insurance benefit
of three times his annual salary.  At that time, Mr. Hargis elected only the company-provided life

insurance benefit and did not apply for supplemental life insurance.  As a result, Mr. Hargis's life insurance benefit at that time was $139,257.30, the same amount as his annual salary.  To obtain this coverage, Mr. Hargis was not required to provide any medical history or undergo any physical examination.

In approximately June 2001, Mr. Hargis's department  began operating as a separate affiliate company of Idacorp, Inc., known as Idacorp Energy, L.P. ("Idacorp Energy").  In November 2001, Idacorp Energy began the process of implementing its own company benefit plans, in part through a group life insurance policy furnished by Standard Insurance Company ("Standard").  The group policy offered Plan 1, which consisted of non-contributory benefits in an amount equal to an employee's annual salary, for which Idacorp Energy paid the premiums, and Plan 2, which consisted of contributory benefits of up to three times an employee's annual salary, for which the employee paid the premiums.  Employees applying for benefits in excess of a total of $400,000 were required to show evidence of insurability, unless the life insurance benefit previously provided to them through Idaho Power Company exceeded $400,000.

Mr. Hargis applied for life insurance benefits under the new Idacorp Energy Plan by completing a Group Life/AD&D Insurance Coverage Card on November 12, 2001.  The Idacorp Energy benefit was to be effective on January 1, 2002.  As indicated on his coverage card, Mr. Hargis applied for a total life insurance benefit equal to four times his annual salary of $139,257.30, or a total benefit of $557,029.20.  Subsequently, Mr. Hargis's annual salary increased to $160,000, which increased his potential benefit to $640,000.

Idacorp Energy sent its employees' life insurance applications to Standard in late November 2001.  Following receipt, Standard sent Idacorp Energy medical history forms to distribute to Mr. Hargis and other employees who had applied for benefits in excess of $400,000.

The forms requested information relating to height, weight, and basic medical information, and they comprised the first step of showing evidence of insurability.  Idacorp Energy sent the medical history forms to its employees on or about December 10, 2001, with instructions that the forms had to be completed and returned to Idacorp Energy in order to obtain the requested coverage.  Letter from Dona Pike King, Idacorp Energy, to W. Burl Brock, Attorney for Plaintiffs (July 10, 2003) (Plaintiffs' Exhibit A).  Employees were held responsible for completing and returning the forms and for providing the required information.  Idacorp Energy sent the medical history forms that were returned to it to Standard on January 7, 2002.  Upon receipt and review of the medical history forms, Standard was to determine whether further evidence of insurability, such as medical examinations, was necessary for employees to show insurability for benefits in excess of $400,000.  Standard has no record of receiving Mr. Hargis's medical history form.  The evidence does not indicate whether Mr. Hargis completed or attempted to return the medical history form to Idacorp Energy or to Standard.

During the time that Idacorp Energy was implementing its benefit plans, it was also in the process of setting up its payroll department to be operable by January 1, 2002.  Idacorp Energy based the premium amounts to be withheld from employee paychecks on the insurance coverage cards that employees had submitted.  Beginning in January 2002, Idacorp Energy withheld a premium from Mr. Hargis's paycheck based on the full amount of life insurance he had requested, that is, a benefit equal to four times his annual salary.

Mr. Hargis died on January 6, 2003, from an upper respiratory infection that developed into sepsis.  Plaintiffs Les Hargis and Deanna Hargis, who are Mr. Hargis's parents as well as his designated beneficiaries, filed a claim for $641,000 in life insurance proceeds under the Idacorp Energy Plan.  Plaintiffs' claim was examined by Becky A. Smith, a claims administrator

3

designated and employed by Standard, who had complete discretion to handle claims for benefits

under the Summary Plan Description ("SPD") and Group Life Insurance Policy ("Policy").  On

March 3, 2003, Standard sent letters to Plaintiffs stating that Standard's review of their claims

had been completed, and that it was forwarding checks for a total amount of $400,056.58 (the

$400,000 guaranteed issue amount, along with $56.58 in interest), representing the group life

insurance proceeds payable upon the death of Jack Gregory Hargis.  The letters explained that

Standard had determined that Mr. Hargis was eligible for only $400,000 in life insurance because

he did not provide the evidence of insurability required for any additional amount of benefits.

On March 13, 2003, Standard sent letters to Plaintiffs articulating the applicable plan

provisions and explaining why the additional $241,000 in claimed benefits was being denied.  A

check for $522.72, the amount of premiums paid for the additional $241,000 in life insurance

from January 1, 2002 to February 1, 2003, was enclosed with these letters.  Plaintiffs' attorney

returned this check to Standard.  Standard forwarded a reissued check for the same amount on

July 16, 2003, along with an explanation that Standard had completed its examination of

Plaintiffs' claim.

Plaintiffs subsequently filed this lawsuit, seeking policy benefits above the $400,056.58

paid by Standard, in a total amount of $241,000.  Subsequently, Defendants and Plaintiffs filed

motions for summary judgment.  Plaintiffs contend that Defendants waived the evidence of

insurability requirement as to Mr. Hargis by taking premiums for the full amount of benefits he

had requested from his paychecks for thirteen months.  Plaintiffs also assert that the review of

their claim by Standard's own employee created a conflict of interest that warrants *de novo*

review of the claims administrator's decision.  Defendants argue that the doctrine of waiver

should not be applied in this case, and that the Court should review the claims administrator's

decision for an abuse of discretion.  The Court held a hearing on the parties' opposing motions for summary judgment.  The parties agreed that there are no unresolved issues of material fact, and that the Court has before it all information necessary to render judgment in this case.

## II.  ANALYSIS

### A. Summary Judgment Standard

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law, based on the evidence thus far presented.  *See* Fed. R. Civ. P. 56(c).  "Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted).  A genuine issue of material facts exists if a reasonable jury could enter a verdict for the non-moving party.  *Crawford v. Formosa Plastics Corp*., 234 F.3d 899, 902 (5th Cir. 2000).  The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor.  *Id*.

"[A] complete failure of proof concerning an essential element of [Plaintiffs'] case necessarily renders all other facts immaterial" and "mandates the entry of summary judgment" for Defendants.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  If Defendants show that there is a lack of evidence to support Plaintiffs' case, Plaintiffs "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."  *Kee*, 247 F.3d at 210 (quotation omitted).   Plaintiffs cannot satisfy this burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).

**B. Application of ERISA to Insurance Policy**

Defendants argue that the Idacorp Energy Plan constitutes an employee welfare benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 *et seq.*  Plaintiffs concede that "[f]or purposes of this summary judgment motion and response only, Plaintiffs are not contesting whether the Plan is an ERISA plan, and as a result, whether their claims are subject to the constraints of ERISA."  Plaintiffs' Motion for Summary Judgment at 16.  In light of Plaintiffs' concession, and because Plaintiffs have not identified any facts or legal argument to controvert the application of ERISA to the Idacorp Energy Plan, Defendants are entitled to have the plan treated as an ERISA plan.

Even without Plaintiffs' concession, the Court would conclude that the policy at issue in this case is governed by ERISA as an "employee welfare benefit plan."  ERISA defines an "employee welfare benefit plan" as any "plan, fund, or program . . . established or maintained by an employer . . . for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise . . . benefits in the event of sickness, accident, disability, death or unemployment . . . ."  29 U.S.C. § 1002(1).  Whether a particular set of insurance arrangements constitutes an employee welfare benefit plan is a question of fact.  *Hansen v. Cont'l Ins. Co.*, 940 F.2d 971, 976 (5th Cir. 1991) (citing *Gahn v. Allstate Life Ins. Co.*, 926 F.2d 1449, 1451 (5th Cir. 1991)).

In deciding whether a particular insurance plan is covered by ERISA, courts should first determine whether the plan is among those excluded from ERISA's coverage by the Department of Labor regulations.  *Hansen*, 940 F.2d at 976.  These regulations provide that an "employee welfare benefit plan" does not include a group insurance program offered by an insurer to employees under which:

(1) No contributions are made by an employer or employee organization;
(2) Participation [in] the program is completely voluntary for employees or members;
(3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
(4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3-1(j); *see Hansen*, 940 F.2d at 977.  All of these criteria must be met for an insurance plan to be excluded from ERISA coverage.  *Hansen*, 940 F.2d at 977; *Gahn*, 926 F.2d at 1452.

With respect to the Idacorp Energy Plan, the undisputed facts establish that the first, second, and third criteria are not met.  Idacorp Energy contributed to the provision of benefits by paying the premiums for benefits of one time each employee's annual salary.  These benefits were not completely voluntary, but rather automatic for all full time employees working at least 30 hours per week.  Additionally, Idacorp Energy's involvement with the plan was not limited to those activities listed in the third criteria.  Idacorp Energy arranged for and negotiated with Standard concerning the terms and provisions of the plan and the levels of coverage available, and the plan designated Idacorp Energy as the Plan Administrator.  Idacorp Energy distributed the plan to all of its employees and acted as its employees' point of contact for both official ERISA inquires and for practical administrative duties.  Idacorp Energy's involvement with the formation and administration of the plan demonstrates its endorsement of the plan as a means for providing benefits to its employees.  Although the available evidence does not permit a conclusion as to whether the Idacorp Energy Plan meets the fourth criteria, the plan's failure to meet the first three criteria is clear.  Accordingly, the plan is not excluded from ERISA's coverage under the Department of Labor regulations.

7

The Fifth Circuit has held, however, that even if a plan is not excluded from ERISA by virtue of the Department of Labor regulations, the plan is not necessarily covered by ERISA. *Hansen*, 940 F.2d at 977.  In order to be covered by ERISA, a plan must meet two additional elements:  first, it must be established or maintained by an employer; and second, the employer must have the intent or purpose to provide benefits to its employees.  *Id.*  A plan is established "if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits."  *Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 240 (5th Cir. 1990) (quoting *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982) (en banc)).

As Defendants point out, and as Plaintiffs do not dispute, Idacorp Energy both established and maintained the plan in this case.  The intended life insurance benefits, the class of employee beneficiaries, the financing provided by both Idacorp Energy and its employees, and the procedures for receiving benefits are clearly articulated in the SPD and the Policy, and are thus ascertainable by a reasonable person.  Additionally, the undisputed evidence demonstrates Idacorp Energy's intent to establish the plan for the purpose of providing benefits to its employees.  Such intent can be inferred from Idacorp Energy's purchase of the insurance policies and from its involvement with the formation and administration of the Plan, as discussed above. *See Gahn*, 926 F.2d at 1452 (finding that the trial court should have focused on the employer's involvement with the administration of the plan); *Mem'l Hosp. Sys.*, 904 F.2d at 242 (noting that "the purchase of a policy or multiple policies covering a class of employees offers substantial evidence that a plan, fund, or program has been established") (quoting *Donovan*, 688 F.2d at 1373).  Through its involvement in the purchase and administration of the plan, Idacorp Energy demonstrated its intent to provide life insurance benefits to its employees.  The summary

judgment evidence demonstrates that the Idacorp Energy Plan is an "employee welfare benefit plan" governed by ERISA.

## C. Doctrine of Waiver

Defendants assert that, because the Idacorp Energy Plan is an "employee welfare benefit plan" governed by ERISA, the Court is barred from applying the doctrine of waiver, whether based on state common law or federal common law.  Plaintiffs contend that the doctrine of waiver applies to this case through federal common law, and that Defendant Standard waived the requirement that Mr. Hargis present evidence of insurability through its acceptance of premiums for the full amount of benefits Mr. Hargis had requested.

### 1. Federal Common Law Doctrine of Waiver in ERISA cases

ERISA contains an expansive preemption provision, which specifies that ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a).  This preemption provision bars state causes of action under ERISA plans and was designed to make the regulation of employee benefit plans "exclusively a federal concern."  *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46 (1987); *see also Hansen*, 940 F.2d at 979 ("when beneficiaries seek to recover benefits from a plan covered by ERISA, their exclusive remedy is provided by ERISA") (citing *Degan v. Ford Motor Co.*, 869 F.2d 889, 893 (5th Cir. 1989)).  While ERISA preempts *state* law causes of action, however, the Fifth Circuit has recognized that courts may apply *federal* common law to claims under ERISA to fill gaps in the legislation.  *See, e.g.*, *Jamail, Inc. v. Carpenters Dist. Council of Houston Pension & Welfare Trusts*, 954  F.2d 299, 303-04 (5th Cir. 1992) (recognizing a federal common law right of restitution for overpayment under an ERISA plan).

The Fifth Circuit does not recognize all federal common law doctrines in the context of ERISA.  As Defendants note, the doctrine of estoppel is one aspect of federal common law that the Fifth Circuit has refused to apply to ERISA plans.  *See Rodrigue v. W. & S. Life Ins. Co.*, 948 F.2d 969, 971 (5th Cir. 1991) (reasoning that ERISA addresses and prohibits estoppel claims by requiring that employee benefit plans be established and maintained pursuant to written instruments); *see also Degan*, 869 F.2d at 895 (concluding that allowing estoppel claims based on oral representations would "undermine Congress's goal of fashioning a comprehensive system of federal law designed to strengthen and protect the interests of employees in their expected retirement benefits").

Though the Fifth Circuit has declined to apply the common law of estoppel to ERISA claims, however, it has held that the doctrine of waiver may be applied in the context of ERISA. In *Pitts v. American Security Life Insurance Co.*, the Fifth Circuit distinguished the doctrines of estoppel and waiver and found that the insurer in that case had waived its right to assert its policy requirements as a defense to liability by accepting premium payments and paying benefits.  931 F.2d 351, 357 (5th Cir. 1991); *see also Jamail, Inc.*, 954 F.2d at 304 n.8 (citing *Pitts* and recognizing the court's application of the common law doctrine of waiver to a claim under ERISA).  Similarly, in *Rhorer v. Raytheon Engineers and Constructors, Inc.*, the court recognized the existence of a factual issue as to whether an ERISA plan administrator waived a recovery requirement by accepting premiums from the insured.   181 F.3d 634, 645 (5th Cir. 1999).  Other courts have also recognized the application of the doctrine of waiver to ERISA cases.  *See, e.g.*, *Gaines v. Sargent Fletcher Inc. Group Life Ins. Plan*, 329 F. Supp. 2d 1198, 1222 (C.D. Cal. 2004).

The cases cited by Defendants do not persuade the Court otherwise.  In *McNeil v. Time Insurance Co.*, the Fifth Circuit  held that the plaintiffs' *state* common law claims, including waiver, were preempted by ERISA.  205 F.3d 179, 191 (5th Cir. 2000).  The  court based its decision on ERISA's preemption of state law claims and did not consider whether any federal common law doctrine of waiver might apply to the case.  *Id.   McNeil* was later cited in an unpublished decision from the Northern District of Texas, which  held that a plaintiff's state law claim of estoppel and claim of waiver were preempted by ERISA.  *High v. E-Systems, Inc.*, 2005 WL 323728 at *6-7 (N.D. Tex. 2005).  Neither of these cases, nor any others, indicate that the federal common law doctrine of waiver is preempted by ERISA.  Because the Fifth Circuit has, on the contrary, held that the federal doctrine of waiver may be applied to ERISA claims, this Court will now analyze whether waiver should be applied against Defendants in this case.

*2. Plaintiffs' Claim of Waiver*

The Court concludes that Plaintiffs' claim of waiver presents a legal question, rather than a challenge to Standard's interpretation of the plan's terms.  As discussed above, the doctrine of waiver stems from federal common  law rather than ERISA, and the claims administrator does not appear to have made any inquiry into the existence of waiver in this case.  *See Rhorer*, 181 F.3d at 638-639 (distinguishing a  challenge to a  claims administrator's interpretation of plan terms from a legal question).  Because the Court reviews Plaintiffs' claim of waiver as a legal question apart from its review of the claims administrator's decision, it is not limited to considering only the evidence contained in the administrative record.  *Cf. Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 299 (5th Cir. 1999) (holding that, when assessing factual questions relating to an claims administrator's denial of benefits, a trial court is limited to the evidence before the administrator).

Nonetheless, the undisputed facts establish that Standard did not waive the evidence of insurability requirement as to Mr. Hargis. Under federal common law, waiver has been defined as the "voluntary or intentional relinquishment of a known right." *Rhorer*, 181 F.3d at 645; *Pitts*, 931 F.2d at 357. For Standard to have intentionally waived its right to insist that Mr. Hargis provide evidence of insurability, Standard must have known of Mr. Hargis's failure to provide evidence of insurability and known that it was accepting premiums for the full amount of insurance that he had requested. Absent knowledge that it was accepting these premiums from Mr. Hargis, Standard cannot be said to have acted intentionally. In *Pitts*, for example, the court held that when an insurer accepted premium payments and paid medical benefits after it had learned that its policy requirements had been breached, it thereby waived its right to assert a defense to liability under its policy. 931 F.2d at 357. Similarly, the court in *Rhorer* found that evidence that an insurer knew that its insured was ill and had stopped working from his office before it allowed him to enroll in optional life insurance and accepted his premiums, could allow a reasonable jury to conclude that the insurer knowingly waived its right to enforce its active work requirement. 181 F.3d at 645.

Here, however, Plaintiffs have not shown that Standard had the requisite knowledge to invoke the doctrine of waiver. While Standard can be assumed to have known that it had not received Mr. Hargis's medical history form, Plaintiffs have not produced any evidence showing that Standard had knowledge of Idacorp Energy's withholding of premiums from Mr. Hargis's paychecks. On the contrary, Standard has shown that it lacked knowledge that Idacorp Energy was withholding the premiums from Mr. Hargis and sending the amounts to Standard.

In a declaration submitted to the Court, Marcy David, Team Leader of Service and Risk Management in Standard's Operations Department, confirmed that because Standard used a

12

"summary billing" method for the Idacorp Energy Plan, it could not and did not know which employees of Idacorp Energy were insured in what amount.[1]   David Decl. at 2.   Under the summary billing method, Standard's practice is to send an invoice to an employer for all of the covered employees in one lump sum.  *Id.*  The amount invoiced is based on the previous month's payment, or for the first invoice, based on the number of employees covered by the prior insurance carrier.  *Id.*  The employer may make corrections to the invoice, for example, if the number of employees covered has changed, or if employees have elected different amounts of insurance.  *Id.*  The employer then sends the revised invoice back to Standard, along with a lump sum payment for the entire company.  *Id.*  Under the summary billing method, there is no breakdown of how much is being billed for each employee, and Standard accepts the employer's revisions and lump payment without knowing which employee is paying what amount in premiums.  *Id.*

Plaintiffs argue that Standard's summary billing method "equate[s] to the Ostrich sticking its head in the sand to avoid seeing what danger may lie in wait."   Plaintiffs' Reply at 3. Plaintiffs' analogy is in some sense true, and the Court notes its concern with Standard's failure to account for the amount of premiums being withheld from each employee's paycheck and to follow up on medical history forms that it had not received.   However, Standard's summary billing method cannot be said to be unreasonable, and by summary billing the Idacorp Energy Plan, Standard had no way of knowing that premiums were erroneously being withheld from Mr. Hargis's paychecks.   Without this knowledge, Standard could not have waived the plan's language requiring employees to provide evidence of insurability for benefits over $400,000.

---

[1] Were the Court to conclude that it was limited to the administrative record on the issue of waiver and could not consider Marcy David's declaration, its conclusion would not change.  Plaintiff bears the burden of showing that Standard waived the evidence of insurability requirement, and thus, that Standard was aware of the deduction of premiums from Mr. Hargis.  Plaintiff, however, has failed to produce evidence showing Standard's knowledge of the premiums.

Plaintiffs advance one further argument supporting waiver, asserting that, by collecting and remitting premiums to Standard, Idacorp Energy acted as Standard's agent, and accordingly, that Idacorp Energy's knowledge of the premiums withheld from Mr. Hargis's paychecks can be imputed to Standard.  This argument is directly contradicted by the language of the SPD and Policy in this case, both of which state that "[t]he Policyowner and your Employer act on their own behalf as your agent, and not as our agent."  SPD at 25; Policy at 30.  This language makes clear that Idacorp Energy was not acting as Standard's agent.  Under ERISA, the language of the SPD is controlling, and thus, the Court can impute no additional knowledge to Standard on the basis of its relationship with Idacorp Energy.  *See Cefalu v. B.F. Goodrich Co.*, 871 F.2d 1290, 1296 (5th Cir. 1989) (noting that ERISA's "writing requirement gives the plan's participants and administrators a clear understanding of their rights and obligations").  The summary judgment evidence shows that  Standard did not know that premiums were being withheld from Mr. Hargis's paychecks for the full amount of insurance he had requested.  Standard therefore did not waive its right to insist that Mr. Hargis provide evidence of insurability as a requisite to coverage under the Idacorp Energy Plan.  The Court thus turns to its review of the claims administrator's denial of benefits to Plaintiffs.

**D. Review of Claims Administrator's Decision**

*1. Standard of Review*

"[A] denial of benefits challenged under [ERISA's private enforcement provision] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  "When the ERISA plan vests the fiduciary with discretionary authority to determine eligibility for benefits under the plan or to

14

interpret the plan's provisions, our standard of review [of the fiduciary's decision] is abuse of discretion." *Ellis v. Liberty Life Assurance Co.*, 394 F.3d 262, 269 (5th Cir. 2004) (internal quotation marks omitted).  It is undisputed that the Idacorp Energy Plan gives the Claims Administrator, Standard, discretion to interpret the plan terms and the right to determine entitlement for benefits.  SPD at 24; Plaintiffs' Motion for Summary Judgment at 3.  Therefore, Standard is an ERISA fiduciary, and the "abuse of discretion" standard applies to its denial of benefits.

Plaintiffs contend that the fact that the claims administrator who reviewed their claim was an employee of Standard created a conflict of interest, which entitles them to *de novo* review of her decision.  This contention is not legally sound, nor supported by the facts of this case.  The Fifth Circuit has noted that a conflict of interest is not established simply by showing that the same entity decides claims to benefits and pays those claims that are granted.  In *MacLachlan v. ExxonMobil Corporation*, the court found that:

> The mere fact that benefit claims are decided by a paid human resources administrator who works for the defendant corporation does not, without more, suffice to create an inherent conflict of interest.  Were that enough, there would be a near-presumption of a conflict of interest in every case in which an employer both offers a plan and pays someone to administer it, making a full application of the abuse of discretion standard the exception, not the rule.

350 F.3d 472, 479 n.8 (5th Cir. 2003).  Even in the *Gaines* case cited by Plaintiffs (which is not binding authority), the court noted that when a plan is both funded and administered by an insurer, this establishes only an *apparent* conflict of interest.  329 F. Supp. 2d. 1198, 1211 (C.D. Cal. 2004).  In order to prove the existence of an *actual* conflict of interest, the beneficiary bears the burden of presenting material evidence that the apparent conflict affected the administrator's decision.  *Id.* at 1212.  This evidence might include "inconsistent behavior in dealing with a beneficiary, inconsistent reasons for denying benefits, and conduct that exhibits an adversarial

15

attitude toward a beneficiary with the clear objective of denying the beneficiary's claim." *Id.*
Plaintiffs in this case have failed to produce evidence of any of these factors or any other
evidence that would indicate an actual conflict of interest arising from the claims administrator's
employment with Standard.

Moreover, to the extent that any conflict of interest existed here, the Court should weigh
this possible conflict as a factor in determining whether the claims administrator abused her
discretion in denying Plaintiffs' claim.  The Fifth Circuit has repeatedly held that the existence of
a conflict of interest does not alter the applicable standard of review to *de novo* review, but
rather, "[t]he existence of a conflict is a factor to be considered in determining whether the
administrator abused its discretion in denying a claim."  *Vega*, 188 F.3d at 297; *see also Duhon
v. Texaco, Inc.*, 15 F.3d 1302, 1306 (5th Cir. 1994) (finding that the defendant's role as both the
administrator of its own plan and the payor of the benefits did not warrant *de novo* review, but
rather should be considered in reviewing the administrator's decision for abuse of discretion).
Thus, the Court will review the claims administrator's decision here for abuse of discretion,
taking into consideration her employment with Standard.

*2. Claims Administrator's Decision*

The Fifth Circuit has enunciated a two-part test for review of a plan administrator's
denial of ERISA benefits.  *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 637 (5th Cir. 1992).
"First, a court must determine the legally correct interpretation of the plan.  If the administrator
did not give the plan the legally correct interpretation, the court must then determine whether the
administrator's decision was an abuse of discretion."  *Id.*  In determining whether a plan
fiduciary's interpretation of the plan is legally correct, the Court should consider three factors:
"(1) whether the administrator has given the plan a uniform construction, (2) whether the

16

interpretation is consistent with a fair reading of the plan, and (3) any unanticipated costs resulting from different interpretations of the plan." *Id.* at 638.

Here, the parties have not submitted evidence as to whether the claims administrator has given the Idacorp Energy Plan a uniform construction or whether unanticipated costs may result from different interpretations of the plan.  Thus, the Court will focus on whether the claims administrator's reading of the plan was fair and reasonable.  The Fifth Circuit has recognized this inquiry as "[t]he most important factor to consider." *Gosselink v. Am. Tel. & Tel., Inc.*, 272 F.3d 722, 727 (5th Cir. 2001); *see also James v. Louisiana Laborers Health & Welfare Fund*, 29 F.3d 1029, 1033 (5th Cir. 1994) (focusing solely on whether the reading of the plan was fair and reasonable, in the absence of evidence of the other factors).  In analyzing an administrator's interpretation of a plan, the plan's language is "preeminent." *Aboul-Fetouh v. Employee Benefits Comm.*, 245 F.3d 465, 472 (5th Cir. 2001).

The evidence of insurability requirement for benefits exceeding $400,000 is clearly and plainly articulated in both the SPD and Policy for the Idacorp Energy Plan.  The SPD and Policy state that evidence of insurability is required"[f]or any combination of Plan 1 and Plan 2 Life Insurance Benefit in excess of the Guarantee Issue Amount of $400,000."  SPD at 2; Policy at 6. The SPD and Policy specify that:

> Evidence of Insurability means an applicant must:
> 1.  Complete and sign our medical history statement;
> 2.  Sign our form authorizing us to obtain information about the applicant's health;
> 3.  Undergo a physical examination, if required by us, which may include blood testing; and
> 4.  Provide any additional information about the applicant's insurability that we may reasonably require.

SPD at 27; Policy at 32.   Additionally, under the heading, "When Life Insurance Becomes Effective," the SPD and Policy state that "Life Insurance subject to Evidence of Insurability

becomes effective on the date we approve your Evidence of Insurability."  SPD at 8; Policy at

13.  The SPD and Policy also cover the event of clerical error, stating that "[c]lerical error by the

Policyowner, your Employer, or their respective employees or representatives will not . . .

[c]ause a person to become insured."  SPD at 25; Policy at 30.

Based on the evidence of insurability requirement articulated in the SPD and Policy, it

was reasonable and fair for the claims administrator to conclude that, because Standard had not

received a medical history form or any other evidence of insurability from Mr. Hargis, his

requested life insurance benefits exceeding the amount of $400,000 had not become effective.

The language of the SPD and Policy puts applicants on notice that their requested benefits will

not be effective until Standard actually approves their evidence of insurability.  The SPD and

Policy further notify applicants that evidence of insurability requires at least the completion of a

medical history statement and authorization form, and possibly also the provision of a physical

examination or additional information.  Although the Court has noted its concern with Standard's

summary billing method and failure to follow up on evidence of insurability for its new

applicants, these practices are not unreasonable in light of the plan's SPD and Policy.

Additionally, it was reasonable for the claims administrator to conclude that Idacorp

Energy's deduction of premiums from Mr. Hargis's paychecks was a clerical error made in the

process of setting up its payroll.  The claims administrator's decision that the deduction of these

premiums did not make Mr. Hargis eligible for benefits over the amount of $400,000 was in

accord with the statements in the SPD and Policy regarding clerical error, and this decision was

therefore a reasonable and fair reading of the plan.  As the claims administrator's decision is

based upon a fair reading of the SPD and Policy, there is no evidence that her employment with

Standard affected her decision.  As previously discussed, the doctrine of waiver, though not

18

precluded as a matter of law, is inapplicable to the facts of this case. The Court therefore concludes that the claims administrator's interpretation of the Idacorp Energy Plan was correct and not an abuse of discretion.

## III. CONCLUSION

Plaintiffs' Motion for Summary Judgment is **DENIED**. Defendants' Motion for Summary Judgment is **GRANTED**, and the case is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**.

**SIGNED** this 26th day of October, 2005.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**